UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL JAIME,<br><br>        Plaintiff,<br><br>    v.<br><br>KERN MEDICAL, et al.<br><br>        Defendants. | No. 1:23-cv-01145-NODJ-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF THE ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>(ECF No. 14) |

Plaintiff is proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's second amended complaint, filed November 2, 2023.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## SUMMARY OF ALLEGATIONS

The Court accepts Plaintiff's allegations in his complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

Plaintiff's due process rights were violated when his prescription for Suboxone was stopped because a note ("kite") was found inside Plaintiff's unit which implicated Plaintiff of selling Suboxone. Plaintiff asserted he was never found guilty of the allegation. In addition, no investigation on the allegation was conducted and there was no incident report. There is no proof of Plaintiff selling his Suboxone or proof he brought his Suboxone to his cell. Medical staff provide the medication inside the unit.

On March 10, 2022, at approximately 9:30 a.m., Plaintiff saw Dr. Holton. Plaintiff explained his concern about his severe withdrawal because of the discontinuance of his prescription for Suboxone. Dr. Holton stated, "I'm not going to argue with you" and sent back to

1 his cell.  Plaintiff knows that Dr. Holton has observed other inmates who suffered withdrawal when Suboxone is stopped abruptly.

On June 9, 2022, Plaintiff was seen by Dr. Holton to discuss the MAT contract that Plaintiff signed on April 25, 2022.  On this date, Dr. Holton said, "Can't put you back on Suboxone because you were using opiates."  He further stated, "I can't give you back your Suboxone because you are a heroin user."  Dr. Holton accused Plaintiff of selling Suboxone without any proof.

Doe No. 2, the facility medical provider, had Plaintiff sign the MAT program contract on April 25, 2022.  Plaintiff believed that by signing the MAT program contract he would be placed back on Suboxone.  Plaintiff informed Doe No. 2 that he experienced painful withdrawal symptoms and he was craving other drugs.  Doe No. 2 referred Plaintiff to Dr. Gonzalez, the MAT physician.  Doe No. 2 had already informed Dr. Gonzalez about Plaintiff's withdrawal and pain, but allowed the prescription for Suboxone to be discontinued.

On or about May 29 or May 30, 2022, nurse K. Kalfman answered Plaintiff's grievances.  In the grievance response Plaintiff was informed he would be seen by a provider on June 6, 2022, but he was not seen on this day.  Plaintiff filed another grievance, and Kalfman answered it on June 9, 2022, informing Plaintiff he would not be given Suboxone.

## III.

## DISCUSSION

**A.    Discontinuance of Suboxone[1]**

It appears that Plaintiff was a pretrial detainee at the time of allegations in this action, as he states he was transferred from CDCR custody to the Kern County Pre-Trial Detention Facility.

Deliberate indifference to a serious medical need violates the Eighth Amendment's prohibition against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  In the context of

---

[1] "Suboxone" is a brand name for the drug "buprenorphine," which is both a Schedule III narcotic and a treatment for patients who are addicted to opioids. See United States v. Abovyan, 988 F.3d 1288, 1296 (11th Cir. 2021).

3

pretrial detainees, as here, an inmate's rights derive from the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishments Clause. See Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). Under the Fourteenth Amendment, a plaintiff's claim is evaluated under an objective deliberate indifference standard.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018) (internal quotations omitted).

Regarding the third element of the Gordon test, the "defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." Id. This differs from the Eighth Amendment test for deliberate indifference to the medical needs of convicted inmates which requires that the "prison official must subjectively have a sufficiently culpable state of mind." Id. at 1125 n.4 (internal quotations omitted). Pretrial detainees like plaintiff need not prove the subjective elements of the Eighth Amendment deliberate indifference test, namely actually knowing of and consciously disregarding an excessive risk to inmate health or safety. Id.  Still, plaintiff must allege more than objectively negligent conduct to bring a constitutional claim.  Id. at 1125 (requiring pretrial detainee plaintiffs to "prove more than negligence but less than subjective intent—something akin to reckless disregard"). But again, to satisfy this quasi-reckless mental state element, pretrial detainees need only include allegations sufficient for the court to conclude that under an objective standard, a reasonable person in the official's position would have realized the high degree of risk—not that the official in question actually realized such risk. Gordon, 888 F.3d at 1125; see also Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (quoting Restatement (Second) of Torts § 500 cmt. a (Am. Law Inst. 2016) commentary on showing "reckless

disregard" under objective standard).

As before, "[i]ndifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks omitted). And alleging that there was disagreement—either from the plaintiff, or another medical provider—as to what medications to prescribe also remains insufficient, by itself, to establish deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (mere difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (same). That said, after Gordon, for a pretrial detainee to state a claim based on "choices between alternative courses of treatment," he must only allege that the chosen course of treatment "was medically unacceptable under the circumstances," Toguchi, 391 F.3d at 1058—not that the chosen treatment was also chosen "in conscious disregard of an excessive risk to the prisoner's health," id.; see also Flentoil v. Santa Clara Cty. Dep't of Corr., No. 18-CV-03486-EMC, 2020 WL 571025, at *9 & n.6 (N.D. Cal. Feb. 5, 2020) (" 'Conscious disregard' simply is not a part of the Fourteenth Amendment's objective deliberate indifference test.").

Plaintiff's prescription for Suboxone was discontinued because a note (kite) was found in his cell implicating that Plaintiff was selling Suboxone and he subsequently tested positive for drugs which both "reasonably advanced [the] legitimate correctional goal" of curbing prescription medication abuse, dependency, and potential diversion within the prison. See Brodheim v. Cry, 584 F.3d 1261, 1269 (9th Cir. 2009); see also Hicks v. Dotson, 73 F. Supp. 3d 1296, 1305 (E.D. Wash. 2014) ("The DOC has a legitimate penological goal in regulating prescription pain medication to avoid drug abuse."); O'Brien v. Saha, No. 1:19-cv-01957-JLS (JLB), 2021 WL 960693, at *9–10 (S.D. Cal. Mar. 15, 2021) (rejecting prisoner's claims that doctor's failure to immediately cite safety and security as a justification to taper his Gabapentin in response to CCHCS's non-opioid pain management policy meant that the discontinuation of the Gabapentin had "no penological interest." ); Joseph v. Clayton, No. 3:19-CV-2139-GPC-RBM, 2020 WL 804863, at *7 (S.D. Cal. Feb. 18, 2020) (noting that "reducing prescription drug abuse and drug

addiction among the prison population" is a legitimate penological interest) (internal quotation marks and citations omitted); Miller v. California Dep't of Corr. & Rehab., No. 1:16-cv-02431-EMC, 2018 WL 534306, at *18 (N.D. Cal. Jan. 24, 2018) (taking inmate off medication "not appropriate for his medical condition also advances the legitimate penological goal of reducing prescription drug abuse and drug addiction among the prison population"); Juarez v. Butts, No. 2:15-cv-1996 JAM DB P, 2020 WL 2306850, at *11 (E.D. Cal. May 8, 2020) (concluding that "even if staff was incorrect to conclude that [plaintiff] intended to abuse his medication," the prison doctor's "assessment reflect[ed] a legitimate penological interest in preventing drug abuse") (internal quotation marks and citation omitted); Townsen v. Hebert, No. 3:13-cv-00223-MMD-VPC, 2015 WL 5782036, at *4 (D. Nev. Oct. 2, 2015) ("Courts have repeatedly recognized inmates' health and safety as legitimate penological interests.") (citations omitted); United States v. Garrison, 888 F.3d 1057, 1059 (9th Cir. 2018) ("There is now an epic crisis of deadly opioid abuse and overuse.... And in 2017, the Acting Secretary of Health and Human Services declared the national opioid abuse epidemic a public health emergency.")

In addition, it is clear from Plaintiff's first amended complaint that he was offered Vivitrol in place of Suboxone to help alleviate his symptoms which he refused, and he filed several grievances which were promptly reviewed by medical personnel.[2]  Based on the factual allegations before the Court, Plaintiff has not demonstrated that any prison official made an intentional decision not to treat Plaintiff's withdrawal symptoms for improper reasons and were not deliberately indifferent to Plaintiff.  Accordingly, Plaintiff fails to state a cognizable claim for relief.

### B.     Inmate Appeal Process

"A prison official's denial of a grievance does not itself violate the constitution." Penton v. Johnson, 2019 WL 6618051, at *6 (E.D. Cal. Dec. 5, 2019) (quoting Evans v. Skolnik, 637 F.

---

[2] While it is true that an amended complaint supersedes the original complaint, Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012), Plaintiff also may not omit relevant facts in an attempt to state a cognizable claim. See Azadpour v. Sun Microsystems, Inc., 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.' ") (citations omitted).

1 App'x 285, 288 (9th Cir. 2015)). "An allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983." Evans, 637 F. App'x at 288, citing Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("Ramirez's claimed loss of a liberty interest in the processing of his appeals does not satisfy this standard, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure."); see also Alford v. Gyaami, 2015 WL 3488301, at *10 n.2 (E.D. Cal. June 2, 2015) ("Even if prison officials delay, deny, or erroneously screen out a prisoner's inmate grievance, they have not deprived him of a federal constitutional right."); Wright v. Shannon, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (allegations that prison officials denied or ignored inmate appeals failed to state a cognizable claim under the First Amendment).

### C. State Law Claims

Plaintiff claims he was subjected to negligence, emotional distress, suffering and impairment of enjoyment of life.

As an initial matter, in order to proceed with a state law claim, Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state laws are not sufficient to state a claim for relief under § 1983. Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. Here, the Court has yet to find a cognizable federal claim.

In addition, under California law, in order to state a tort claim against a public entity or public employee under state law, a plaintiff must allege compliance with the presentment of claims requirements of the California Government Claims Act. See Cal. Gov't Code §§ 945.4, 950.2; Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988); Fisher v. Pickens, 225 Cal. App. 3d 708, 718, 275 Cal. Rptr. 487 (1990).

The Act's claims presentation requirements apply to state prisoners. Cal. Gov't Code § 945.6(c). "Before a civil action may be brought against a public entity [or public employee], a claim must first be presented to the public entity and rejected." Ocean Servs. Corp. v. Ventura Port Dist., 15 Cal. App. 4th 1762, 1775, 19 Cal. Rptr. 2d 750 (1993); Cal. Gov't Code § 945.4 (generally

1  barring suit "until a written claim therefor has been presented to the public entity and has been
2  acted upon by the board, or has been deemed to have been rejected by the board"1). Claims for
3  "injury to person or to personal property" must be presented within six months after accrual. See
4  Cal. Gov't Code § 911.2(a); City of Stockton v. Superior Court, 42 Cal. 4th 730, 738, 68 Cal. Rptr.
5  3d 295, 171 P.3d 20 (2007).  A claimant who misses the six-month limitations deadline may file a
6  written application with the public entity for leave to present the late claim within one year of the
7  date of accrual of the cause of action, stating the reason for the delay. Cal. Gov't Code § 911.4. The
8  claimant has six months after a denial of the application to file a petition in the Superior Court for
9  an order relieving the claimant of section 945.4. Cal. Gov't Code § 946.6.

10       Here, in his first amended complaint, Plaintiff did not allege timely and proper compliance with the claims presentation provision of the Government Claims Act.  However, in the second amended complaint, Plaintiff contends that on October 29, 2023, he filed a claim with the California Government Claims Act, and has therefore plead proper compliance.  "[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." City of Stockton v. Superior Court, 42 Cal. 4th at 738 (citation and internal quotations omitted). "Compliance with California's claim filing statute is ... an element of a cause of action against the state." United States v. State of Calif., 655 F.2d 914, 918 (9th Cir. 1980) (citations omitted). "Complaints that do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused are subject to a general demurrer for not stating facts sufficient to constitute a cause of action." Rubenstein v. Doe No. 1, 3 Cal. 5th 903, 906, 221 Cal. Rptr. 3d 761 400 P.3d 372 (2017) (citation and quotations omitted).  Here, although Plaintiff claims he filed a claim on October 29, 2023, he has not indicated whether the claim was ruled upon.  Accordingly, even if Plaintiff stated a cognizable federal claim, he cannot proceed with any state laws claim without proper compliance with the Government Claims Act.

### D.       Further Leave to Amend

In the Court's prior two screening orders, the Court identified the same or very similar deficiencies in Plaintiff's prior complaints, provided Plaintiff with the relevant legal standards, and allowed Plaintiff to amend his complaints.  Plaintiff filed his second amended complaint with

8

the benefit of the Court's screening orders but failed to cure the deficiencies identified by the Court and further leave to amend would be futile. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-1449 (9th Cir. 1987).  Accordingly, the Court recommends that further leave to amend be denied.

### IV.

### RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that the instant action be dismissed for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 9, 2024**

UNITED STATES MAGISTRATE JUDGE